Please call Michael Houston Pro Se. This suit is against doctors as licensed professionals, not in the individual capacity. On Illinois law, the mere fact that a doctor was acting within the scope of his or her employment is not sufficient to make the United States the real party in interest. This duty is derived from the doctor's status as a licensed professional doctor under Chapter 255 of the Illinois Compliance Statute, titled Professionals and Occupations. It is wholly independent of the doctor's government employment. With respect to the duty of care all by the doctor, it is the common law of Illinois, section 299A of the Restatement Second Atolls. It is an accurate statement of the common law of Illinois. For these reasons, this case should be remanded back to the Circuit Court of Cook County, Illinois. Any questions? That's fine. I don't know if we have any questions for you, but we certainly have read your brief. Maybe if you would like to address for a moment the point that the What does matter is the circumstances under which the United States substitutes itself as a defendant for the Federal Tort Claims Act, and that is a different concept of scope of employment than Illinois uses. These people were working as physician's assistants and a physician, and whether they made mistakes or not doesn't mean they weren't acting within the scope of their employment. Whether the source of their duty to the patient was something that stemmed from professional training or whether it was something that stemmed from the fact they were working for the government is also not relevant under the Federal Tort Claims Act. That's the government's primary argument. I'm sure you've read their brief. Correct. So if you would like to comment on that, that would be fine. But I'm looking at, you know, if we apply Illinois law. But this is a Federal Tort Claims Act case. This is a Federal Tort Claims Act, but I believe even though it's a Federal Tort Claims Act under Illinois law, you still have to apply Illinois laws to the citizen matter. Okay, well if you decide you want to say more after the Mr. Cook. May it please the Court. Mr. Houston. Your Honor, I think this case comes from a misunderstanding about the law that applies here. Could you speak up? Excuse me. Is this better, Your Honor? I think Mr. Houston's appeal comes from a misunderstanding of what law applies here. According to the appellant's opinion, the United States would never be liable for the torts committed by its doctors. And although that would personally relieve my own caseload, that's not the policy of the United States. We do want to be liable for torts committed by our doctors. So I have a question. The reason the United States is involved at all, I understand, is because this health center is covered under the HHS. Correct. So had a person wanted to exhaust administrative remedies, do you go to the Department of Health and Human Services or where do they go and how do they know where to go? There is a, the process is to file a administrative complaint with the Department of Health and Human Services. It is with HHS? Correct. And is there some office there that handles these things or how do you, how does one know where to go if you get negligent care at a health center that falls within this scope? Well there is a website where the health clinics can be looked up to see whether they're qualified federal clinics. There's also a hotline that can be called to determine whether they're on that list. So are the qualified health clinics 100% funded by the receive federal funding under the Public Service Act and that's what allows the their employees to be deemed under the Federal Tort Claims Act. I don't know whether they're deemed federal employees even though they're actually working for this health center. They're not like, you know, somebody works for the Department of Justice or whatever who's obviously a federal employee. That's, that's correct. They're, well they're deemed for purposes of litigation under the Federal Tort Claims Act for towards a rising out of their medical care. And so the Attorney General makes the usual scope of employment certification for people with these, who are in these health clinics? Yeah, if they are working for a health care clinic that receives public service funds and they're working within the scope of their employment based upon the allegations against them, yes. So, so if the plaintiff had proceeded against the government under the Federal Tort Claims Act, the government would be responsible for his malpractice. Is that, is that correct? Your Honor, the question, if, if the plaintiff had proceeded against the United States based upon Mr. Picard's conduct, would the United States be liable if there was a finding in fault? Well, like ultimately, right, so he files all the right administrative things, he gets the ability to sue, the government certifies scope of employment, and we'll just assume for the sake of argument there's a determination that Picard was negligent and violated standards of care, etc. So the government pays, right? That's correct. It's not under any exception in the Tort Claims Act or anything. That's correct. The United States in the beginning of the case would be, as we did in this case, would substitute itself for, for the health care professional, Mr. Picard. And in the event that the case, there was a settlement, the United States would pay for that. This is extremely serious malpractice. I don't know if you're aware of that. This Stevens-Johnson syndrome is very rare. It's an extraordinarily destructive disease. The important thing, what, what Picard failed to do is not, he didn't have to warn Houston that taking allopurinol risks Stevens-Johnson syndrome. He has to tell them that if you have any allergic reaction, you must immediately go to an emergency room because if you delay by hours, you are going to end up in this horrible situation. I trust your Honor's observations. That's the case. We've had cases like this. I'm personally not familiar with the condition. The case has not gotten to the point where we've looked closely at the doctor's conduct or the condition or conditions that Mr. Houston suffered in this case. All right, we understand that. So if you have anything else to say? No, if there are no further questions, I'd ask that the District Court properly held that each of Mr. Houston's state law claims against Qualitas is preempted by federal law. Additionally, the District Court did not abuse its discretion by dismissing each of Mr. Houston's claims against Qualitas with prejudice because amendment would be futile in light of two recent binding Supreme Court cases. In the last four and a half years, the United States Supreme Court has held twice that state law claims, like the ones that Mr. Houston has brought against Qualitas, are preempted by federal law because it would be impossible for a generic prescription drug manufacturer to comply with its state law duties without violating federal law. So suppose somebody like Mr. Houston, in a public-spirited way, wants to do something about inadequate warnings, let's say, for allopurinol. Does the FDA entertain applications to change, obviously not just, I understand the sameness thing, not generic, to improve what it says or to get it off the market or to restrict its approved uses or otherwise to modify? I believe they do, Your Honor, and that is something that Mr. Houston could do. No, I mean, just as a citizen, I'm thinking, you know, if you're stuck with this sameness, however inadequate these warnings may be, they could be equally miserable, right, for both the original drug and the generic. It's a distasteful thought that there's absolutely nothing someone can do about that. Your Honor, you're correct that a citizen could petition the FDA or Congress, and then there could be changes. But Congress, don't tell me that. But as the Supreme Court ruled in both Mensing and Bartlett, no matter how your sympathies lie, the law is the law, and under the federal law, Qualitas was preempted. They were not allowed to change the label or the design of the do anything. It has some bioequivalent, it's got the warnings have to be the same. I get that. Correct. So together, Mensing and Bartlett established that Qualitas could not unilaterally change its label, it cannot unilaterally change its design, and also it couldn't be forced with exiting the market is the only way of complying with the state law. And it couldn't write like what they keep calling a dear doctor letter, like please, please, please give people proper warnings along the line that Judge Posner... Correct, Your Honor, because as the Supreme Court noted, that is considered labeling, and therefore Qualitas would have been in violation of federal law. No, this isn't a labeling issue. What the guy, no, no, the problem with the labeling is there are so many extremely low probability disastrous potential consequences of taking a drug that there isn't room for listing all of them. Your Honor, it's also... The need is for the doctor to warn people who take this drug that if they have any allergic reaction, however mild, that's a medical emergency. They must immediately go to an emergency room. That's what's required. Now I take it if Houston had required procedures, he could make that argument under the Federal Tort Claims Act, right? Which covers malpractice, I assume. I won't speak to what claims he could bring under the Federal Torts Claim Act. I said I will not speak to what claims he could bring under the Federal Torts Claim Act, which I don't represent the government. Well, malpractice, isn't that a tort? Malpractice is a tort. So why can't you bring it under... If he followed the proper Federal... So that's your position. Go sue the United States. Don't sue us. Right? We are not the proper defendant. It's also important to note that there is actually a warning in Qualitas' allopurinol label about Steven Johnson syndrome. What it doesn't do is convey the urgency. It says if you have a rash, go see a doctor, but a lot of people get little rashes, you know, even from gardening and they don't think that much of it, they throw some hydrocortisone on it, but this rash isn't a rash that should be treated that way. That's the issue. Your Honor, it's the warning that the FDA approved for the name-brand manufacturer and Qualitas complied with its federal obligation to use the exact same warning as the name-brand. So this case fits squarely within mensing and Bartlett. Mr. Johnson, as we've discussed, alleges that he suffered from Steven Johnson syndrome and the allopurinol with the same design, the same warnings as the name-brand drug. Okay. Thank you, Your Honor. Thank you very much. Anything further, Mr. Houston? I believe under federal law, whether the federal government employs doctors on Illinois law, 28 U.S.C. 1346b1? Right, the underlying case follows the law, the liability standards follows the law of Illinois, but if the doctor is an employee of the United States, as these public health doctors are deemed to be, then the United States steps in once it certifies that that's, in other words, he wasn't off, you know, in West Virginia on the weekend doing something having nothing to do with this clinic. He was working for the clinic and thus in the scope of his employment. I think that's the concept. Okay, we move on to Coyle test, qualitas, from the pseudocodes. I had a motion to remand that was presented to the district court. The motion, the district court never made a ruling on the reasons why he missed that motion. Undoubtedly, the reason he did not remand is because if there is federal jurisdiction in the federal court, then it's not appropriate to remand it to the state court. The federal court should keep the case, and they're seeing, the judges understanding this is a question whether qualitas duties under the Food and Drug Act name, you know, and all of its regulations have been complied with. He says it sort of has to be that. It can't be state law here. That's what preemption means. So that has to be part of the same case in controversy? Yeah. It does? It's all part of, it all arises out of this one incident that happened to you, right? That's what prompts the whole lawsuit. Okay. All right. Thank you. You're welcome. Thank you, and thanks. No, I don't think so. Thanks to all counsel. We will take the case under advisement.